***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Pfeiffer. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, and rehear the parties or their representatives. The Full Commission MODIFIES and AFFIRMS the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. All parties are properly before the Industrial Commission, and the Commission has jurisdiction of the parties and the subject matter.
3. All parties have been correctly joined, and there is no question as to misjoinder or nonjoinder of parties.
4. The Atlantic Group, Inc. is the defendant-employer in this matter, with Argonaut Insurance Company as the carrier on the risk for workers' compensation purposes.
5. On July 18, 2000, plaintiff was employed by defendant-employer as a pipewelder/fitter, and earned wages in the amount of $16.00 per hour, working 50 hours per week. Plaintiff's total average weekly wage at that time was $800.00.
6. Plaintiff sustained an admittedly compensable injury by accident to his back arising out of and in the course of his employment on July 18, 2000.
7. Plaintiff has been out of work and has received from defendants ongoing temporary total disability compensation benefits from August 18, 2000 in the weekly amount of $588.00.
8. In addition to the deposition transcripts and the exhibits attached thereto, the parties stipulated into evidence in this matter a packet of 129 pages of medical records marked collectively as stipulated exhibit one. Defendants introduced and the Deputy Commissioner admitted into evidence the following: (1) plaintiff's answers to interrogatories; (2) health questionnaire dated August 23, 1999; (3) job description for nuclear welder; (4) investigative report for October 2000; (5) videotape (October 27, 2000); (6) investigative report from November 9, 2000; (7) videotape (November 9, 2000); and (8) investigative report for February 8, 2001.
9. The issues before the Commission are whether plaintiff's back symptoms and complaints of pain are causally related to his admittedly compensable injury by accident of July 18, 2000, and to what disability and medical benefits, if any, does plaintiff remain entitled.
 ***********
Based upon the competent evidence of record herein, the Full Commission finds:
 FINDINGS OF FACT
1. As of the date of the Deputy Commissioner hearing in the matter, plaintiff was 47 years old. Plaintiff has earned his G.E.D. His previous work history consists of auto mechanic work, welding, and pipe fitting. Plaintiff had been a welder for 20 years.
2. In May 1992 plaintiff sustained a work-related injury to his back when he lifted a car transmission and strained his back. Plaintiff was working for an employer other than defendant-employer at that time. Plaintiff filed a workers' compensation claim for this injury, and received medical treatment for the injury. This injury did not warrant surgical intervention. Plaintiff recovered from this injury after being out of work for two to three years, and was assigned a five percent permanent partial impairment rating to his back from Dr. Carol M. Wadon. Dr. Barry E. White, from Cape Fear Neurology Associates, assigned a 12.5 percent permanent partial impairment rating and gave a 50 pound lifting restriction in May 1993.
3. In August 1999 plaintiff was involved in a motor vehicle accident as a result of which he developed shoulder, neck, and low back pain with radicular symptoms. Plaintiff was seen by chiropractor Robert W. Twaddell. Plaintiff reported to Dr. Twaddell that he had not experienced the same or similar complaints in the past, a report that was untrue. Plaintiff underwent a course of conservative treatment from which he testified that he fully recovered. On January 19, 2000 Dr. White was of the opinion that the motor vehicle accident exacerbated plaintiff's underlying low back condition, and he increased plaintiff's permanency rating to 17.5 percent.
4. An MRI done on September 23, 1999 after the motor vehicle accident revealed marked degenerative changes at L4-5 and L5-S1 with disc bulging.
5. Plaintiff testified at the hearing before the Deputy Commissioner that he lied to Dr. Twaddell and Dr. White when he told them that after his motor vehicle accident in August 1999 he developed low back pain with radicular symptoms into his left leg. Plaintiff's purported purpose for lying about his symptoms was to get more money from the claim. Plaintiff testified:
 "I told a lie that my back was hurting, and my back was not hurting. I told a lie about the burning going down the center of my back and my left leg. Who wouldn't, when somebody rear-ends you, when you know he's going to be at fault? Come on, now. Who wouldn't?"
6. Plaintiff became employed as a welder by defendant-employer in March 2000, at which time he indicated that he was capable of lifting 50 to 100 pounds. However, defendant-employer accommodated plaintiff's lifting restrictions of no greater lifting than 50 pounds unassisted.
7. On July 18, 2000 plaintiff was helping a coworker lift a heavy piece of steel when plaintiff felt a sharp pain in his back. Plaintiff reported that same day to Sanford Medical Group where he was initially seen by a physician's assistant, but later came under the care of Dr. Emile G. Vandermeer. At this initial visit, plaintiff complained of low back and cervical pain, and was diagnosed with low back strain and cervical strain. Plaintiff failed to report the August 1999 motor vehicle accident to Dr. Vandermeer. Plaintiff's symptoms were similar if not identical to those he experienced following his August 1999 motor vehicle accident.
8. Defendants admitted the compensability of and their liability for plaintiff's July 18, 2000 injury to his back by filing a Form 60 that was dated September 20, 2000 and have been paying benefits to plaintiff since August 2000.
9. Plaintiff treated with Dr. Vandermeer for several weeks, and he prescribed a course of physical therapy. Dr. Vandermeer never thought that plaintiff had a surgical problem, and diagnosed back strains. An MRI taken August 15, 2000 revealed an extruded disc at L4-5; however, plaintiff's symptoms could not be explained based solely upon the MRI results, and his complaints of pain were not consistent with his physical exam. Dr. Vandermeer was unable to conclude that the incident of July 18, 2000 caused or aggravated plaintiff's underlying cervical and lumbar problems thereafter.
10. Although he did assign restrictions, Dr. Vandermeer never took plaintiff out of work as a result of the injury. On August 1, 2000 plaintiff reported to the physician that he had taken himself out of work due to purported difficulties driving and "problems with coworkers." By August 25, 2000, Dr. Vandermeer felt that plaintiff was capable of returning to work in some capacity, and that his failure to attempt to do so was probably related to "non-physical" factors. Plaintiff became very upset when informed by Dr. Vandermeer that he was capable of doing some restricted work activity.
11. In his deposition Dr. Vandermeer stated that plaintiff's reports of pain were not consistent with his physical examination. Dr. Vandermeer stated he did not know if plaintiff's behavior was malingering (intentional misrepresentation) or symptom magnification (unintentional), but that a strain usually resolves in three to six weeks. Dr. Vandermeer noted that plaintiff had no problems walking around the room.
12. Plaintiff was evaluated by Dr. Samuel K. St. Clair, a neurosurgeon, on August 18, 2000. Dr. St. Clair noted the widespread nature of plaintiff's complaints, and questioned whether the MRI results were consistent with plaintiff's varied symptoms. Dr. St. Clair noted that the disc lesion at L4-5 might (emphasis is the doctor's) correspond to his lower back and extremity pain, but that the physician could not be sure of that, and that surgery, if done, might not improve plaintiff's symptoms, and it certainly would not improve plaintiff's cervical symptoms.
13. Dr. Vandermeer referred plaintiff to Dr. Kevin Vaught, a neurosurgeon. Plaintiff gave a history to Dr. Vaught of injuring his back at work, but again omitted any reference to the 1999 motor vehicle accident. Dr. Vaught was aware of plaintiff's 1992 injury and treatment because he had the records of treatment by Dr. Wadon, but he did not have records from the 1999 motor vehicle accident.
14. Plaintiff reported to Dr. Vaught that he had neck pain that radiated into both arms to the elbows. In addition, plaintiff complained of low back pain radiating into both hips and legs. However, Dr. Vaught detected no evidence of radiculopathy, myelopathy, or obvious peripheral neuropathy. Dr. Vaught ordered bilateral upper and lower extremity EMGs and nerve conduction studies and a nerve block.
15. Plaintiff obtained no significant relief from the subsequent four weeks of physical therapy. Similarly, the nerve block offered no significant pain relief. The EMG and nerve conduction studies showed no evidence of cervical radiculopathy. Plaintiff continued to complain of constant and debilitating pain, even though he was now taking round the clock narcotics.
16. Dr. Vaught noted that although plaintiff's MRI showed abnormalities, the abnormalities did not completely fit with his current symptoms, and Dr. Vaught was uncertain of the etiology of plaintiff's pain. Dr. Vaught therefore ordered lumbar and cervical myelogram CTs.
17. By December 1, 2000, Dr. Vaught recommended surgery because of the failure of conservative treatment to improve plaintiff's complaints of pain though he had not determined the source of the pain. In December 2000, plaintiff had a markedly positive straight leg raise test for the first time. The surgery recommended by Dr. Vaught was denied by defendant-carrier as being unrelated to the July 18, 2000 injury by accident. Dr. Vaught performed a hemilaminectomy and diskectomy at L4-5 on March 15, 2001. While plaintiff did obtain relief from the surgery, he later began to complain of increased problems relating to his right leg. Dr. Vaught referred plaintiff to a pain clinic in June 2001, as there were no additional surgical procedures warranted.
18. Dr. Vaught felt that plaintiff's low back pain and resulting surgery were causally related to his July 18, 2000 injury by accident. However, this opinion is based solely upon plaintiff's history to the physician regarding the onset of his symptoms and plaintiff's assertion that his underlying condition was exacerbated by the July 18, 2000 injury by accident. If plaintiff was not being truthful in his reported history to Dr. Vaught, then Dr. Vaught indicated that he would not be able to express a credible opinion on causation. Dr. Vaught's opinions on causation are given little weight because the opinions are based upon inaccurate, incomplete information given by plaintiff.
19. Given that in the latter part of 1999, plaintiff was treated for the same complaints as following the July 2000 injury by accident, including a very similar MRI; that plaintiff admitted at the Deputy Commissioner hearing that after the motor vehicle accident he lied to the physicians treating him for his own monetary gain; that plaintiff neglected to report to several of his physicians that he had similarly injured his back in an August 1999 motor vehicle accident; that plaintiff's complaints often were inconsistent with the objective findings; and that there is evidence that plaintiff repeatedly magnified his symptoms and/or malingered, the Commission finds that plaintiff's testimony is not credible.
20. Plaintiff sustained a compensable injury by accident on July 18, 2000 that caused cervical and lumbar spine strains. These strains were superimposed upon his underlying, preexisting degenerative disc conditions. As of the December 1, 2000 visit to Dr. Vaught, plaintiff's back strains had resolved and the remaining back condition, surgery and disability, if any, were not causally related to the compensable injury by accident.
21. There is evidence of record in the form of a surveillance videotape and report that show a man raking leaves at what is represented to be plaintiff's residence on October 27, 2000. Defendants attempted to show in this videotape that plaintiff was engaged in an activity involving bending and some lifting, activities which plaintiff contended he was unable to do at all. Upon review of the videotape, the Commission is unable to determine the identity of the man because no frame of the tape shows the person's face and the person appears to be considerably heavier than plaintiff, who attended the Full Commission hearing, and the person attending a doctor's appointment shown on the other videotape. No weight has been given the October 27, 2000 videotape as credible evidence related to plaintiff's medical condition.
22. There is insufficient evidence of record from which the Commission can find by its greater weight that plaintiff's disc herniation at L4-5 was either caused or materially aggravated by the July 18, 2000 such that surgery was necessary.
23. Due to the lack of sufficient evidence of record that plaintiff's disc herniation and resulting surgery on his lumbar spine were causally related to plaintiff's lumbar strain that occurred on July 18, 2000, there is insufficient evidence of record from which the Commission can find by its greater weight that plaintiff remained totally disabled after of December 1, 2000 due to the compensable lumbar and cervical strains.
24. There is insufficient evidence of record from which the Commission can find by its greater weight that the injury by accident of July 18, 2000 aggravated plaintiff's preexisting cervical degenerative disc disease other than causing a cervical strain.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained an admittedly compensable injury by accident on July 18, 2000 that resulted in cervical and lumbar strains. N.C. Gen. Stat. § 97-2(6).
2. As a result of his admittedly compensable injury by accident, defendants paid temporary total disability compensation benefits at the weekly rate of $588.00 from August 18, 2000, and these payments continue. N.C. Gen. Stat. § 97-29.
3. Defendants admitted compensability of plaintiff's injury by accident on July 18, 2000 by filing a Form 60. However, the Form 60 does not create a presumption of continuing disability and therefore the burden of proving disability remains with plaintiff. Sims v.Charmes/Arby's Roast Beef, 142 N.C. App. 154, 542 S.E.2d 277 (2001).
4. In order to meet the burden of proving disability, plaintiff must prove that he was incapable of earning pre-injury wages in either the same or in any other employment and that the incapacity to earn pre-injury wages was caused by plaintiff's injury. Hilliard v. Apex Cabinet Co.,305 N.C. 593, 290 S.E.2d 682 (1982).In the instant case the only expert testimony or evidence that attributed plaintiff's herniated disc and need for surgery to the compensable injury was based upon plaintiff's history, and plaintiff is specifically found herein to be not credible. Accordingly, plaintiff has not met his burden of proving that he was disabled after December 1, 2000 as a result of the compensable injury by accident. N.C. Gen. Stat. §§ 97-2(9) and 97-29.
5. Plaintiff received medical treatment that was reasonably necessary to affect a cure, give relief, or lessen the period of his disability. N.C. Gen. Stat. §§ 97-2(19) and 97-25. However, plaintiff's medical treatment after December 1, 2000 was not causally related to his compensable cervical and lumbar strains.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 ORDER
1. Plaintiff has not met his burden of proving that his disability, if any, after December 1, 2000 was causally related to the compensable injury by accident. Therefore, plaintiff is entitled to no additional indemnity benefits or any medical treatment after December 1, 2000.
2. Because defendants overpaid plaintiff, if any permanency rating is assigned due to the compensable injury by accident, defendants would be entitled to a credit for the overpayment of benefits.
3. Under the law, plaintiff's claim for ongoing indemnity and medical benefits is HEREBY DENIED.
Each party shall bear its own costs.
This the ___ day of November 2002.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/____________ BUCK LATTIMORE CHAIRMAN
 S/_______________ RENEE C. RIGGSBEE COMMISSIONER